```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
C. ANDREW SALZBERG, M.D., as assignee of         :
PATIENT "DM" and C. ANDREW SALZBERG,             :    Index No.: 17 CV 7909 (VB)
M.D., individually,                              :
                                                 :    AMENDED COMPLAINT
              Plaintiff                          :
                                                 :
       against                                   :
                                                 :
AETNA INSURANCE COMPANY AS                       :
ADMINISTRATOR, BANK OF AMERICA                   :
CORPORATION, JOHN AND JANE DOES (1-10)           :
and ABC CORPORATIONS (1-10),                     :
                                                 :
              Defendants                         :
------------------------------------------------------------- X
```

COMES NOW Plaintiff, C. Andrew Salzburg, M.D., by way and through its attorneys Cohen & Howard, LLP and as and for its Complaint against defendants, Aetna Insurance Company, Bank of America Corporation, John and Jane Does (1-10), and ABC Corporations (1-10), says:

## THE PARTIES

1. Plaintiff, C. Andrew Salzberg, M.D. (hereinafter referred to as "Dr. Salzberg") with a business address of 155 White Plains Road, Tarrytown Village in the Town of Greenburg, County of Westchester, and State of New York is now and was at all times relevant to this action a Board Certified Plastic Surgeon with a Fellowship in Plastic and Reconstructive Surgery, who is licensed to practice under the Laws of the State of New York, providing healthcare services.

2. Upon information and belief, at all relevant times, defendant, Bank of America Corporation, (hereinafter referred to a "Bank of America") maintains offices and conducted significant business in the State of New York and acted as plan sponsor and/or administrator for Bank of America's employee health welfare plan.

3. Defendant, Bank of America maintains a corporate business office address of 100 North Tryon Street, Charlotte, North Carolina.

4. Upon information and belief, at all relevant times, defendant, Aetna Insurance Company (hereinafter referred to as "Aetna") was a corporation whose headquarters are located 151 Farmington Avenue, Hartford, Connecticut, which conducted and continues to conduct significant business in the State of New York.

5. Upon information and belief, at all relevant times, defendant, Aetna acted as the plan administrator and/or claims administrator for defendant, Bank of America.

6. At all times relevant, upon information and belief, fictitious defendants, John and Jane Does 1 through 10 and ABC Corporations 1 through 10, are yet to be identified entities who directly and proximately caused damages to plaintiff.

## VENUE

7. Plaintiff's offices are located in Westchester County, New York and all medical services which are the subject matter of this action were rendered at St. John's Riverside Hospital at Dobbs Ferry Pavilion located in Westchester County, New York.

8. Patient "DM" (herein identified only by her Aetna Identification No.: 824430127) at all relevant times lived in the State of New York.

9. At all times relevant, upon information and belief, defendant, Bank of America employed the patient, "DM" and sponsored her health benefits.

10. Upon information and belief, at all relevant times, "DM" was employed at defendant, Bank of America's office in New York, New York.

11. Plaintiff is proceeding on its own individual claims concerning medical services.

12. The amount in controversy is in excess of $65,000.00.

13. For all the reasons stated above, this Court has jurisdiction over this matter and, further, it is the proper venue for this matter to be heard.

## FACTUAL BACKGROUND

14. This dispute arises out of the defendants' refusal to pay plaintiff the money to which plaintiff is entitled for providing necessary medical services to defendants' insured, "DM".

15. At all relevant times, plaintiff was a non-participating or out-of-network provider that rendered medically-necessary surgery to patient, "DM".

16. At all relevant times, patient, "DM" received health benefits through her employer, defendant, Bank of America, which is a self-insured plan administered by defendants acting as authorized agents for principal defendant, Aetna.

17. The patient, "DM" had been diagnosed with breast cancer and had previously undergone a bilateral mastectomy by an in-network provider and sought treatment and care with an out-of-network provider for her immediate breast reconstruction. Since in reviewing defendant, Aetna's network, the patient, "DM" could not locate an in-network provider to perform the medically necessary immediate surgery at the in-network facility used for the mastectomy. Defendant Aetna is responsible under applicable law to maintain an adequate network of providers to provide access to medical specialists.

18. Prior to performing the surgery, which is the subject matter of this Complaint, plaintiff's office called the defendants to request prior authorization for the surgery. The plaintiff received from the defendants authorization approving the rendering of surgical services to the patient, "DM" under authorization number 63177866.

19. On May 15, 2013, plaintiff provided medically-necessary, **pre-authorized** surgery, namely: right breast reconstruction utilizing other technique, left breast reconstruction utilizing other technique, right breast capsulotomy, removal and replacement of right breast implant, and left breast capsulotomy, removal and replacement of left breast implant.

20. Surgery was performed by C. Andrew Salzberg, M.D., who is a highly trained and skilled Board Certified Plastic Surgeon with a Fellowship in Plastic and Reconstructive Surgery.

21. Plaintiff billed defendants for the primary surgeon charges a total of $78,674.00.

22. The total billed charges for the medically-necessary surgery was $78,674.00, which represents usual and customary charges for the complex procedure performed by a Board Certified Plastic Surgeon with a Fellowship in Plastic and Reconstructive Surgery practicing in New York.

23. The defendants paid only a total of $12,936.87 toward these reasonable charges, leaving the patient with a balance due on this bill of more than $65,000.00.

24. The amount paid to plaintiff by defendants represents a gross underpayment and does not comport in any way with usual, customary or reasonable payments for the type of service rendered by a provider with the skill, experience and training of the doctor provided by plaintiff in this geographical area nor does it provide coverage within the meaning of Federal and State law for breast reconstruction.

25. While defendants were aware that the plaintiff was an out-of-network provider, defendants never disclosed that payments made for the procedures would be paid far below the usual and customary rates for these services and/or that payment would not be made in accordance with applicable law. To the contrary, defendants induced plaintiff to provide the

medical services with the explicit knowledge that it never intended to pay the amounts it was obligated to pay.

## FIRST COUNT
### (Breach of Contract)

26. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "25" of this Complaint with the same force and effect as if fully set forth herein at length.

27. Plaintiff hereby alleges that an implied in-fact contract has been created through defendants' course of conduct and interaction with plaintiff.

28. By authorizing the surgery, defendants agreed to pay the usual and customary rates for the medical services provided by the plaintiff and plaintiff performed said services based upon those terms.

29. This implied contract indicated that plaintiff would be paid by defendants a fair and reasonable amount for the highly-skilled services provided by the plaintiff.

30. However, plaintiff was paid only a fraction -- $12,936.87 -- of the usual, customary and reasonable amount of $78,674.00 for the highly-skilled services provided to patient, "DM".

31. Plaintiffs have suffered significant damages as a result of defendants' actions.

32. As a direct result of defendants' breaches of the contract, plaintiffs have been damaged in an amount to be determined at trial, but not less than $65,737.13, plus interest, costs, and attorneys' fees.

## SECOND COUNT
### (Promissory Estoppel)

33. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "32" of this Complaint with the same force and effect as if fully set forth herein at length.

34. (a) By providing pre-surgery authorization to plaintiff, defendants promised that plaintiff would be paid for its services at the usual, customary and reasonable rate.

(b) By providing pre-surgery authorization to plaintiff, defendants acknowledged that its network of medical specialists was inadequate and would cover the costs in excess of patient's in-network cost sharing obligations.

(c) By providing pre-surgery authorization to plaintiff, defendants represented that coverage for breast reconstruction would be provided in accordance with applicable Federal and State laws.

35. Plaintiff relied upon these promises to its detriment by spending valuable time, resources, and energy in providing medical services to patient, "DM".

36. Plaintiff has suffered significant damages as a result of defendants' actions.

37. As a direct result of defendants' refusal to pay plaintiff the usual, customary, reasonable and fair value for the services plaintiff provided at the behest of defendants, plaintiff has been damaged in an amount to be determined at trial, but not less than $65,737.13, plus interest, costs, and attorneys' fees.

### THIRD COUNT
### (Account Stated)

38. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "37" of this Complaint with the same force and effect as if fully set forth herein at length.

39. After providing the medical services, which were authorized by defendants, plaintiff submitted bills and requests for payment to defendants in the sum total of $78,674.00.

40. To date, defendants, having acknowledged receipt of the bills, have paid a small portion, $12,936.87, of the invoices, but have not objected, in any manner to the billed amounts, including, but not limited to, the amount billed or to the services provided.

41. Plaintiff has suffered significant damages as a result of defendants' action.

42. As a direct result of defendants' refusal to pay plaintiff for the medical services provided and billed to defendants, who acknowledged receipt without objection, plaintiff has been damaged in an amount to be determined at trial, but not less than $65,737.13, plus interest, costs, and attorneys' fees.

## FOURTH COUNT
### (Fraudulent Inducement)

43. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "42" of this Complaint with the same force and effect as if fully set forth herein at length.

44. (a) By providing pre-surgery authorization to plaintiff, defendants promised that plaintiff would be paid for its services at the usual, customary and reasonable rate.

(b) By providing pre-surgery authorization to plaintiff, defendants acknowledged that its network of medical specialists was inadequate and would cover the costs in excess of patient's in-network cost sharing obligations.

(c) By providing pre-surgery authorization to plaintiff, defendants represented that coverage for breast reconstruction would be provided in accordance with applicable Federal and State laws.

45. Inherent in the authorization was the promise to pay plaintiff the usual, customary, reasonable, and fair value for the services provided.

46. Relying upon this promise to pay by defendants, plaintiff provided the necessary medical services requested by plaintiff, "DM".

47. Unbeknownst to plaintiff, defendants never intended to pay the plaintiff usual, customary, reasonable and fair value for the medical services provided, instead inducing plaintiff to provide the medical services with the intent to pay plaintiff less than 16% of the usual, customary, reasonable, and fair value of the medical services provided, plaintiff would have elected not to provide the services.

48. Plaintiff has suffered significant damages as a result of defendants' actions.

49. As a direct result of defendants' refusal to pay plaintiff the usual, customary, reasonable, and fair value for the services plaintiff provided at the behest of defendants, plaintiff has been damaged in amount to be determined at trial, but not less than $65,737.13, plus interest, costs, and attorneys' fees, along with punitive damages in the sum of $100,000.00.

### FIFTH COUNT
### (FAILURE TO MAKE ALL PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B))

50. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "49" of this Complaint with the same force and effect as if fully set forth herein at length.

51. Plaintiff avers this Count to the extent ERISA governs this dispute.

52. Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a Plan.

53. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient.

54. Upon information and belief, Defendants acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

55. Plaintiff is entitled to recover benefits due to Patient under any applicable ERISA Plan and Policy.

56. Upon information and belief, Defendants have failed to make payment pursuant to the controlling Plan or Policy.

57. Plaintiff also alleges that Defendants' decision to pay only a fraction of the usual, customary and reasonable amount to Plaintiff was wrongful.

58. Plaintiff also alleges that Defendants' failed to provide an adequate network of medical specialists and that defendants' have failed to comply with applicable Federal and State law requiring coverage for breast reconstruction

59. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

60. As a direct result of defendants' failure to make all payments pursuant to Patient's plan under 29 U.S.C. § 1132(a)(1)(B), plaintiff has been damaged in amount to be determined at trial, but not less than $65,737.13, plus interest, costs, and attorneys' fees.

### SIXTH COUNT
### (BREACH OF FIDUCIARY DUTY AND CO-FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a))

61. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "59" of this Complaint with the same force and effect as if fully set forth herein at length.

62. 29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

63. Plaintiff seeks redress for Defendants' breaches of fiduciary duty and/or breaches of co-fiduciary duty under 29 U.S.C. § 1132(a)(3)(B), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a).

64. 29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

65. Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1)

66. 29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

67. Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the

administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

68. Here, when Defendants decided to pay only a fraction of the medical bills at issue herein, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendants acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

69. Here, Defendants breached its fiduciary duties by:

1. Failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations;

2. Participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

3. Failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and

4. Wrongfully withholding money belonging to Plaintiff.

70. As a direct result of defendants' breach of fiduciary duty and co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a), plaintiff has been damaged in amount to be determined at trial, but not less than $65,737.13, plus interest, costs, and attorneys' fees.

## SEVENTH COUNT
## (FAILURE TO ESTABLISH/MAINTAIN REASONABLE
## CLAIMS PROCEDURES UNDER 29 C.F.R. 2560.503-1)

71. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "69" of this Complaint with the same force and effect as if fully set forth herein at length.

72. Plaintiff avers this Count to the extent ERISA governs this dispute.

73. 29 C.F.R. 2560.503-1 requires every employee benefit plan establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations.

74. In particular, 29 C.F.R. 2560.503-1 requires that if a claim for benefits is denied in whole or in part, the administrator of every employee benefit plan shall provide written notice of the determination within 90 days after receipt of the claim by the plan.

75. 29 C.F.R. 2560.503-1 further provides that in the event that a claim for benefits is denied, the written notice of the benefit determination must communicate, inter alia, in a manner calculated to be understood by the person claiming benefits: A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

76. 29 C.F.R. 2560.503-1 further provides that every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.

77.     In the case at bar, the employee benefit plan from which Plaintiff claimed benefits did not establish and maintain, in its actual operation of the Plan, procedures that ensured that all relevant time limits and appeal procedures were communicated to the person claiming benefits.

78.     As a consequence of Defendants' failure to provide, in a manner calculated to be understood by the person claiming benefits, including Plaintiff as the beneficiary, and written notice of all relevant time limits and appeals procedures of the Plan in connection with its adverse benefit determination rendered to Plaintiff, the Plan has failed to comply with the Claims Procedures requirements of 29 C.F.R. 2560.503-1.

79.     29 C.F.R. 2560.503-1 further provides that in the event an employee benefit plan fails to establish or follow claims procedures that comply with that regulation, the person claiming benefits shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of ERISA on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

80.     As a direct result of defendants' failure to establish and/or maintain reasonable claims procedures under 29 C.F.R. 2560.503-1, plaintiff has been damaged in amount to be determined at trial, but not less than $65,737.13, plus interest, costs, and attorneys' fees.

## EIGHTH COUNT
### (FAILURE TO ESTABLISH A SUMMARY PLAN DESCRIPTION IN ACCORDANCE WITH 29 U.S.C.A. § 1022)

81.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "79" of this Complaint with the same force and effect as if fully set forth herein at length.

82.     Plaintiff avers this Count to the extent ERISA governs this dispute.

83. 29 U.S.C.A. §1022 requires a summary plan description to be furnished to participants and beneficiaries.

84. The summary plan description must include the plan's requirements respecting eligibility for participation and benefits.

85. Further, the plan "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."

86. In the case at bar, the employee benefit plan is not written in a manner calculated to be understood by the average plan participant. See Exhibit A, plan description of "allowed amount" for out of network services.

87. The Plan has thus failed to comply with the requirements set forth in 29 U.S.C.A. § 1022.

88. As a direct result of defendants' failure to a summary plan description in accordance with 29 U.S.C.A. § 1022, plaintiff has been damaged in amount to be determined at trial, but not less than $65,737.13, plus interest, costs, and attorneys' fees.

**WHEREFORE,** plaintiff respectfully demands judgment against defendants:

1. As and for its First cause of action, for breach of an implied contract in an amount to be determined at trial, but not less than $65,737.13, along with its reasonable attorneys' fees, interest, costs and expenses; and

2. As and for its Second cause of action under the theory of promissory estoppel in an amount to be determined at trial, but not less than $65,737.13, along with its reasonable attorneys' fees, interest, costs and expenses; and

3.   As and for its Third cause of action for an account stated, in an amount to be determined at trial, but not less than $65,737,13, along with its reasonable attorneys' fees, interest, costs and expenses; and

4.   As and for its Fourth cause of action for fraudulent inducement in an amount to be determined at trial, but not less than $65,737.13, along with its reasonable attorneys' fees, interest, costs and expenses, and with punitive damages in the sum of $100,000.00; and

5.   As and for its Fifth cause of action for failure to make all payments pursuant to Patient's plan under 29 U.S.C. § 1132(a)(1)(B) in an amount to be determined at trial, but not less than $65,737.13, along with its reasonable attorneys' fees, interest, costs and expenses; and

6.   As and for its Sixth cause of action for breach of fiduciary duty and co-fiduciary duty under 29 S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a) in an amount to be determined at trial, but not less than $65,737.13, along with its reasonable attorneys' fees, interest, costs and expenses; and

7.   As and for its Seventh cause of action for failure to establish and/or maintain reasonable claims procedures under 29 C.F.R. 2560.503-1 in an amount to be determined at trial, but not less than $65,737.13, along with its reasonable attorneys' fees, interest, costs and expenses; and

8.   As and for its Eighth cause of action for failure to a summary plan description in accordance with 29 U.S.C.A. § 1022 in an amount to be determined at trial, but not less than $65,737.13, along with its reasonable attorneys' fees, interest, costs and expenses; and

9.   Along with such other, further, relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: New York, New York
       March 26, 2018

                LAW OFFICES OF COHEN & HOWARD, L.L.P.
                Attorneys for Plaintiffs

BY: _____
                Aaron A. Mitchell, Esquire
                766 Shrewsbury Avenue, Suite 301
                Tinton Falls, New Jersey 07724
                (732) 747-5202
                (732) 747-5259 (fax)
                amitchell@cohenandhoward.com